IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BETZHAIDA NATAL-FELICIANO and EVELYN ESTEVES-NATAL, on their own behalf and on behalf of the Estate of their deceased husband and father, respectively, ALFREDO ESTEVES-RODRIGUEZ<br><br>Plaintiffs<br><br>vs<br><br>MELVIN NEVAREZ-MALDONADO, RODOLFO OLAVARRIA-FULLERTON, RUBEN LAMBERTY-ALDEA and SERGEANT JOSE JAVIER RIVERA-QUIÑONES, officers of the Puerto Rico Police Department, in their individual and official capacities<br><br>Defendants | CIVIL 14-1844CCC |

**OPINION AND ORDER**

  This is a 42 U.S.C. § 1983 action founded on the alleged violations to the Fourth and Fourteenth Amendments rights of a citizen undergoing a mental health crisis. Supplemental claims under the laws of the Commonwealth have also been asserted. Before the Court now is the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by three of the four defendants on April 6, 2015 (D.E. 12), later joined by the fourth defendant on April 20, 2015 (D.E. 15), and which plaintiffs opposed on May 1, 2015 (D.E. 16).

  Plaintiffs Betzhaida Natal-Feliciano (Natal) and Evelyn Esteves-Natal are the wife and daughter of the affected citizen, Alfredo Esteves-Rodríguez (Esteves), who eventually died of injuries suffered during the August 6, 2012 incident that generates their complaint. Defendants are four Puerto Rico Police

CIVIL 14-1844CCC                              2

Officers from the Toa Baja Police District who intervened with Esteves on August 6, 2012.[1]

The salient facts, taken from the complaint, follow. On August 6, 2012, at around 9:00 PM, Natal called 911 requesting emergency medical assistance for her husband, Esteves, who was then suffering an emotional crisis. He had stated that he wanted to harm himself, had been going around inside the house with a kitchen and salad knife, and had cut himself superficially on the skin several times. He did not threaten anyone else with bodily harm, however. In her 911 call, Natal stated repeatedly that her husband was not threatening anyone, but needed medical attention and an ambulance due to his emotional crisis.

At around 9:20-9:30 PM, the four defendants arrived to Esteves' house in patrol cars. Once in front of the residence, they drew their weapons and started shouting aggressively at Esteves and Natal, ordering them to step out of the residence. Upon seeing the defendants' aggressive behavior, both Esteves and Natal became extremely nervous, and were unable to locate the house keys in order to open their residence and step outside. Natal informed the police officers that she could not locate the house keys and that what they needed was an ambulance for her husband. Esteves, in turn, trying to obey the officers' orders, tried to get out of the house through a window located next to the residence's main entrance.

While Esteves was trying to get out of the house through the window, defendant officer Melvin Nevárez-Maldonado (Nevárez) took a shot at him aiming at his upper body. It is further alleged that the supervising officer at the

---

[1] A fifth officer who was at the scene that night has since passed away and was not included as a defendant in the complaint.

CIVIL 14-1844CCC                               3

scene, Sargent José Javier Rivera-Quiñones (Rivera), failed to take precautionary measures to prevent the use of firearms and excessive force by Nevárez.  The other two police officers at the scene, Rodolfo Olavarría-Fullerton (Olavarría) and Rubén Lamberty-Aldea (Lamberty), also neglected to prevent Nevárez from using his firearm.  Esteves was hit in his lower abdomen, and fell outside his home.  He immediately complained of having been hit and being in great pain.  Despite his injury, and though he had not threatened anybody, defendants placed him under arrest.  As no ambulance had arrived in response to her first 911 call, Natal made a second call after the shooting to again request an ambulance.  After this second call, an ambulance finally arrived and Esteves was rushed to the Puerto Rico Medical Center, where he remained hospitalized over three weeks.  After his transfer to the  Medical Center, Esteves was kept under arrest and under police surveillance without a court order, even though he was in need of psychiatric assistance.  He would require continuous medical treatment and further hospitalization due to his injury, and eventually died two months later on October 4, 2012.  Due to the location of the bullet, it could not be surgically removed until the autopsy was performed.  It is further alleged that during the time he remained hospitalized, Esteves experienced serious complications from his bullet wound that allegedly caused him extreme pain and suffering while he remained alive.

　　　　Plaintiffs aver that the four defendants deprived Esteves of various constitutional rights under the Fourth and Fourteenth Amendments which caused all of them damages for which they are entitled to seek compensation under § 1983.  Specifically, they claim that Esteves was a victim of the use of excessive force, was falsely arrested, and also falsely imprisoned for he was

CIVIL 14-1844CCC                              4

unlawfully detained during the period of his initial hospitalization after the shooting. Supplemental tort claims under Articles 1802 and 1803 of the Civil Code of Puerto Rico for defendants' alleged negligent actions were also asserted. In their dismissal motion, defendants have raised a myriad of challenges to the complaint, asserting that plaintiffs lack standing to sue under § 1983 in their personal capacities, that they have failed to properly plead claims under the Fourth and Fourteenth Amendment, that there is no factual foundation for the claim of use of excessive force brought against defendants Rivera, Olavarría and Lamberty, that no claim under Article 1803 of the Civil Code lies against any of the defendants for none is vicariously liable for the acts of their fellow officers and, finally, that all pendent claims should be dismissed following the elimination of the federal claims. In their opposition (D.E. 13), plaintiffs have vigorously defended some of their claims while consenting to the dismissal of others. We now address the parties' contentions seriatim.

**Plaintiffs' lack of standing to sue under § 1983**:

It is axiomatic that relatives may not assert a § 1983 action seeking damages for the death of a family member as a result of unconstitutional conduct unless the challenged action is directed at their family relationship. Robles-Vázquez v. Tirado-García, 110 F.3d 204, 206 n. 4 (1st Cir. 1997). See also Soto v. Flores, 103 F.3d 1056, 1062 (1st Cir. 1997). It is also firmly established that state action impacting the parent-child relationship only incidentally, as in the case of an unlawful death such as the one alleged in this case, is not deemed to be aimed at family relationships. Pittsley v. Warish, 927 F.2d 3, 8 (1st Cir. 1991). Thus, were plaintiffs' § 1983 action seeking to

Case 3:14-cv-01844-CCC   Document 21   Filed 03/22/16   Page 5 of 9

CIVIL 14-1844CCC                     5

recover for their own damages resulting from the alleged constitutional violations suffered by their relative, they would lack standing to pursue it.

A different question is whether plaintiffs have standing to sue on behalf of the decedent himself for any damages that Esteves suffered before his death. The Supreme Court has held that under 42 U.S.C. § 1988, state law determines the survivorship of a § 1983 action. Robertson v. Wegmann, 436 U.S. 584, 98 S.Ct. 1991 (1978). Hence, following the survivorship rules established by the Puerto Rico Supreme Court in relation to actions brought under Article 1802 of the Civil Code, the Commonwealth's tort statute, it has been repeatedly held in this Court that an heir has standing to bring a § 1983 claim in a representative capacity only when there is a showing that the decedent suffered prior to his death. Rossi-Cortés v. Toledo-Rivera, 540 F.Supp. 2d 318 (D.P.R. 2008); Vargas v. González, 135 F.Supp. 2d 305, 310 (D.P.R. 2001); Gonzalez-Rodriguez v. Alvarado, 134 F.Supp. 2d 451, 454 (D.P.R. 2001). Under Puerto Rico law, Esteves' immediate heirs are his daughter and his wife with her usufructuary share. See 31 L.P.R.A. §§ 2641 and 2411. The complaint alleges that Esteves "experienced serious complications from his bullet wound, including bedsores, speech impairments from tracheal intubation, and others, that would cause extreme pain and suffering during the two months he remained alive." Complaint (D.E. 1), p. 6, ¶ 40. Accordingly, both plaintiffs have standing to sue under § 1983 as representatives of Esteves' estate for any constitutional damages suffered by Esteves himself before his death. However, to the extent that they are asserting a claim under § 1983 for their own damages, those are DISMISSED.

CIVIL 14-1844CCC                                6

**Plaintiffs' failure to plead claims under the Fourteenth Amendment**:

Defendants have asked for dismissal of the claims brought under the Fourteenth Amendment averring that it is the Fourth Amendment, and not the Fourteenth, the one that provides the explicit textual source of constitutional protection against the illegal conduct imputed to them.  In their opposition, plaintiffs have agreed to the dismissal of the claims under the Fourteenth Amendment.  Accordingly, partial judgment will be entered dismissing said claims, with prejudice.

**Plaintiffs' failure to plead claims under the Fourth Amendment**:

As to Fourth Amendment claims, defendants aver that the factual scenario outlined in the complaint fails to state a cause of action.  The pleading standard is well-established.  Fed. R. Civ. P. 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, -- U.S. --, 129 S.Ct. 1937, 1949 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1949). Section 1983 requires three elements for liability: deprivation of a right, a causal connection between the actor and the deprivation, and state action. 42 U.S.C. § 1983.  "A claim has facial plausibility when the plaintiff pleads

CIVIL 14-1844CCC                           7

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, at 1949.

Having carefully reviewed the allegations of the complaint, we conclude that plaintiffs have adequately brought the federal claims under the Fourth Amendment "across the line from conceivable to plausible." Twombly, at 1955. The factual scenario depicted is one where Natal calls 911 for medical assistance due to her husband Esteves' emotional crisis and, instead of an ambulance, five police officers were dispatched to respond to the call.  Once outside the residence, without being threatened by Esteves or anyone from the inside, officers ordered all occupants to leave the premises.  This prompted Esteves to exit through a window since the key to the main door could not be found.  While exiting the residence in compliance with police orders, Esteves was shot by Nevárez.  After being injured, Esteves was placed under arrest and remained detained without a court order while receiving medical assistance at the Medical Center.  At this initial stage of the proceedings, these allegations are sufficient to survive dismissal and to allow for discovery to move forward on the Fourth Amendment claims.  Accordingly, defendants' request for dismissal of the claims of false arrest and false imprisonment/illegal detention under the Fourth Amendment is DENIED.

**Failure to state a claim for the use of excessive force against defendants Rivera, Olavarría and Lamberty**:

Defendants also argue that the complaint fails to state a claim against defendants Rivera, Olavarría and Lamberty for the use of excessive force, noting that the allegations made in this regard are limited to Nevárez. Plaintiffs concur with this assessment.  Therefore, the request for dismissal of the claim

CIVIL 14-1844CCC                8

of use of excessive force is GRANTED as to defendants Rivera, Olavarría and Lamberty, and remain only against Nevárez.

**Failure to state a claim under Article 1803**:

Defendants aver that Article 1803, 31 L.P.R.A. § 5142, codifies vicarious tort liability, and that any such claim would lie only against their employer, the Puerto Rico Police Department, a non-party. Plaintiffs have not addressed this argument. Plaintiffs' Article 1803 claim is solely raised against defendant Rivera, as supervisor, for negligent supervision of the other three defendants. Complaint, at ¶ 60. As defendants correctly contend, Article 1803's coverage is limited to the particular relationships taxatively established therein,[2] see Torres-Pérez v. Medina-Torres, 113 D.P.R. 72, 76 (1982), which do not include

---

[2]Article 1803 provides:

> The obligation imposed by § 5141 [Article 1802] of this title is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.
>
> The father, and, in the event of his death or incapacitation, the mother, is liable for the damage caused by the minor children living with them.
>
> Guardians are liable for the damages caused by minors or incapacitated persons who are under their authority and live with them.
>
> Owners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties.
>
> The Commonwealth is liable in this sense under the same circumstances and conditions as those under which a private citizen would be liable.
>
> Finally, masters or directors of arts and trades are liable for the damages caused by their pupils or apprentices while they are under their custody.
>
> The liability referred to in this section shall cease when the liable persons mentioned therein prove that they employed all the diligence of a good father of a family to preclude the damage.

CIVIL 14-1844CCC                    9

supervisor-supervisee.  Accordingly, the claim under Article 1803 against defendant Rivera is ORDERED DISMISSED.

**Claims under Article 1802**:

Finally, defendants sought the dismissal of all claims under Puerto Rico law premised on their expected pre-trial termination of all the federal claims. However, since some of the federal claims have survived at this stage, the Court retains jurisdiction over plaintiffs' supplemental claims.

**Conclusion**:

Accordingly, and for the reasons explained above, defendants' Motion to Dismiss (**D.E. 12**) is GRANTED IN PART AND DENIED IN PART.  Partial judgment shall be entered DISMISSING:  (1) all claims asserted by the two plaintiffs on their own behalf under 42 U.S.C. § 1983, (2) all claims under the Fourteenth Amendment, (3) all claims under the Fourth Amendment for the use of excessive force as to defendants Rivera, Olavarría and Lamberty, and (4) the claim under Article 1803 of the Civil Code of Puerto Rico against defendant Rivera.

SO ORDERED.

At San Juan, Puerto Rico, on March 22, 2016.

S/CARMEN CONSUELO CEREZO
United States District Judge